UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Raymond Kvalvog and Katherine Kvalvog, *Individually and as Co-Trustees of the Heirs of Zachary and Connor Kvalvog*,<br><br>        Plaintiffs,<br><br>v.<br><br>Park Christian School, Inc., *a Minnesota corporation*; Christopher Nellermoe; Kent Hannestad; Josh Lee; Tim Kerr; The State of Minnesota; Minnesota State Patrol; and Rodney Eichens, Brian Cheney, and Matthew Langer, *each individually and as employees of the Minnesota State Patrol*,<br><br>        Defendants. | File No. 21-cv-1569 (ECT/LIB)<br><br><br><br>**OPINION AND ORDER** |

David J. T. Chapman, D J Chapman Law, P.C., West Fargo, ND, for Plaintiffs.

Anna L. Veit-Carter, Minnesota Attorney General's Office, St. Paul, MN, for Defendants The State of Minnesota, Minnesota State Patrol, Rodney Eischens, Brian Cheney, and Matthew Langer.

Matthew C. Murphy, Amanda M. Cialkowski, and Brian N. Johnson, Nilan Johnson Lewis PA, Minneapolis, MN; Jason M. Stoffel and Lindsey J. Woodrow, Waldeck & Woodrow P.A., Minneapolis MN, for Defendants Park Christian School, Christopher Nellermoe, and Kent Hannestad.

William L. Moran and Briana Gornick, HAWS-KM, P.A., St. Paul, MN, for Defendant Josh Lee.

Paul S. Hopewell, Lilleberg & Hopewell, Edina, MN, for Defendant Tim Kerr.

---

        This is the second of two lawsuits arising out of a June 2015 motor-vehicle accident

that killed teenage brothers Zachary and Connor Kvalvog.  The first lawsuit—brought in

Clay County, Minnesota District Court by Zachary and Connor's parents, Raymond and Katherine Kvalvog—adjudicated liability for Zachary and Connor's deaths. In this second suit, Raymond and Katherine assert federal civil rights claims under 42 U.S.C. §§ 1983 and 1985, along with several tort claims under Minnesota law, alleging that all Defendants corrupted the first lawsuit and that some Defendants defamed them. Defendants seek dismissal on several grounds, and their motions will be granted under Federal Rule of Civil Procedure 12(b)(6). To the extent they allege that Defendants corrupted the state judicial process in the first case, Raymond and Katherine's federal claims in this case are barred by Minnesota's collateral-estoppel doctrine. If that weren't so, the federal claims would fail for other reasons. Because there is not an independent basis for federal subject-matter jurisdiction over Raymond and Katherine's remaining state-law theories of recovery, those claims will be dismissed without prejudice.

I

*The Accident.* The following facts are taken from the Complaint. On the morning of June 23, 2015, Zachary and Connor Kvalvog were killed in a motor-vehicle accident on Interstate 94 near Dalton, Minnesota. Compl. [ECF No. 1] ¶¶ 11, 13, 26. Zachary and Connor were both students and on the varsity basketball team at Park Christian School, a private school in Moorhead, Minnesota. *Id.* ¶¶ 27–28, 16–17. Zachary was driving in a three-vehicle caravan to a basketball tournament in the Wisconsin Dells. *Id.* ¶ 59. Zachary's passengers included his brother, Connor, and two other Park Christian basketball players, Mark Schwandt and Jimmy Morton. *Id.* ¶ 60. Park Christian football coach and assistant basketball coach Tim Kerr led the three-vehicle caravan. *Id.* ¶ 61; Pls.' Mem. in

2

Opp'n [ECF No. 56] at 2 (clarifying that Kerr was assistant basketball coach).   Park Christian's head basketball coach, Josh Lee, drove the second vehicle in the caravan. Compl. ¶ 61.   The accident occurred after Kerr's vehicle had passed, and while Lee's vehicle was passing, a semi-tractor and trailer driven by a still-unidentified driver. *Id*. ¶ 62. Lee's vehicle "cut off the semi" as it passed, and the semi encroached on the left (or "passing") lane where Zachary was driving. *Id*. ¶¶ 62–63.   In Zachary's attempt to avoid a collision with the semi, Zachary's vehicle left the roadway, rolled, and crashed. *Id*. ¶¶ 64–66.

*The First Lawsuit.*   The following facts are drawn from the Clay County District Court's order and memorandum dated December 11, 2020, *see* Veit-Carter Decl. Ex. G [ECF No. 25-1 at 85–100], and they are consistent with the allegations in the Complaint in this case.   Raymond and Katherine (who from this point on will be referred to as "the Kvalvogs") filed the first lawsuit in November 2016, naming Lee and Park Christian School as defendants. *Id*. at 87.   The case was tried before a jury from July 22 to 26, 2019. *Id*.   The jury found that Lee was not negligent in supervising the trip and that the "John Doe" semi driver was negligent and the sole cause of the accident. *Id*.   The jury awarded $5 million in damages to the Kvalvogs. *Id*.   Based on the jury verdict, the Clay County District Court issued findings of fact, conclusions of law, and an order for judgment on August 16, 2019. *Id*.   On September 13, 2019, the Kvalvogs moved for a new trial pursuant to Minnesota Rule of Civil Procedure 59.01, and that motion was denied on February 14, 2020. *Id*.   The Kvalvogs appealed but later moved to stay the appeal to bring a motion in District Court to vacate that Court's order for judgment. *Id*.   The Minnesota Court of

Appeals stayed the appeal and remanded to the District Court to permit the Kvalvogs to file a Rule 60.02(b) motion based on their asserted discovery of new evidence. *Id*. This motion was based essentially on a theory that the Minnesota State Patrol officer who investigated the accident, Sergeant Rodney Eischens, had a personal relationship with leaders of Park Christian School and conspired with the school to avoid liability for the accident. *Id*. at 89. The District Court denied the motion, finding that: (1) the Kvalvogs had not been diligent in discovering the relationship between Sergeant Eischens and Park Christian's leaders because this information could have been discovered prior to trial with reasonable investigation efforts, *id*. at 91; (2) the relationship between Sergeant Eischens, the school, and its administrators did not trigger mandatory disclosure under Minnesota State Patrol policies, *id*.; (3) the Sergeant Eischens-Park Christian School relationship theory contradicted key witnesses' prior sworn statements and was not credible and, even if credible, the information should have been discovered prior to trial, *id*. at 93–96[1]; and (4) if this information had been used to impeach Sergeant Eischens at trial, "it would not have a probable effect upon the result of a new trial," *id*. at 97.[2] The Minnesota Court of

---

[1]    The District Court concluded: "There is nothing [in the record] to suggest that there was a concerted effort on the part of Sergeant Eischens to taint the entirety of the investigation in favor of PCS." *Id*. at 98.

[2]    Though it considered them beyond the scope of the Court of Appeals' remand, the Clay County District Court also addressed arguments presented under Minnesota Rules of Civil Procedure 60.02(c) and (f). *Id*. at 98. As to these arguments, the District Court found that the relationship between Sergeant Eischens, Park Christian, and certain of its administrators and employees was not material and that there was "no merit in Plaintiffs' assertion that Sergeant Eischens deliberately withheld [] information as part of a conspiracy to rob Plaintiffs of a fair trial." *Id*. at 99–100.

Appeals affirmed the District Court's rulings, and the Minnesota Supreme Court denied the Kvalvogs' petition for discretionary review. *Kvalvog v. Lee*, Nos. A20-0693, A20-1587, 2021 WL 3027269 (Minn. Ct. App. July 19, 2021), *review denied* (Minn. Sept. 30, 2021).

*This Lawsuit.* The Kvalvogs' claims in this case seem premised on two general theories. The Kvalvogs' first theory is that Defendants' actions corrupted the judicial process in the first lawsuit. This theory is expressed in different ways in the Complaint, but the following allegation is emblematic: "As a result of the actions of the Defendants, the jury in the [first] case regarding the crash were provided a deliberately false narrative that the Defendant Eischens intentionally crafted to absolve his friends at Park Christian School of all liability." Compl. ¶ 149. The second theory is that two Defendants—Christopher Nellermoe and Park Christian School—have defamed the Kvalvogs. *Id.* ¶¶ 261–78. Ten Defendants are named in the Complaint: Park Christian School, Inc.; Christopher Nellermoe, the current president of Park Christian who at the time of the accident was the school's principal; Kent Hannestad, who was Park Christian's president when the accident occurred; Josh Lee; Tim Kerr; the State of Minnesota; the Minnesota State Patrol; Sergeant Eischens; Minnesota State Patrol Captain Brian Cheney; and Minnesota State Patrol Colonel Matthew Langer. The Kvalvogs assert claims across ten counts: (1) a claim under 42 U.S.C. § 1985 against Park Christian School, Nellermoe, Hannestad, Lee, Kerr[3], and Sergeant Eischens; (2) a claim under 42 U.S.C. § 1983 against

---

[3]     Though not identified in the count's title, *see* Compl. at 31, Kerr is identified in allegations tied to the Kvalvogs' § 1985(2) claim, *id.* ¶¶ 178(26)–(28). In their brief in

Sergeant Eischens; (3) a claim for "fraud and deceit" against Sergeant Eischens; (4) a negligence claim against Sergeant Eischens; (5) a claim that Sergeant Eischens, acting as the agent of Park Christian School and Lee, "engag[ed] in the spoliation of evidence," *id.* ¶¶ 244–246; (6) a negligent-supervision claim against Captain Cheney and Colonel Langer; (7) a defamation claim against Nellermoe; (8) a defamation claim against Park Christian School based on a respondeat superior theory of liability for Nellermoe's statements; (9) a claim under 42 U.S.C. § 1983 against Captain Cheney; and (10) a claim under 42 U.S.C. § 1983 against Colonel Langer.  Specific allegations supporting each claim will be addressed as necessary in analyzing Defendants' motions to dismiss.

II

The scope of this case has narrowed somewhat.  In response to Defendants' motions, the Kvalvogs filed a motion to dismiss all of their claims against Defendants State of Minnesota and the Minnesota State Patrol, their claims against Sergeant Eischens for fraud and deceit, negligence, and evidence spoliation, and their claim against Captain Cheney and Colonel Langer for negligent supervision.  *See* ECF Nos. 70–72.  Though not explicit on this point, the Kvalvogs' motion seems also to recognize that the Eleventh Amendment bars official-capacity claims against Sergeant Eischens, Captain Cheney, and Colonel Langer.  *See* Pls.' Mem. in Supp. [ECF No. 71] at 2 (justifying dismissal of claims asserted against officers in their official capacities); *see also Kruger v. Nebraska*, 820 F.3d 295, 301

---

opposition to Kerr's motion, the Kvalvogs confirmed that "Kerr is only a Defendant under Count 1 for the conspiracy to violate 42 U.S.C. § 1985."  Pls.' Mem. in Opp'n [ECF No. 61] at 7.

(8th Cir. 2016); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). The Kvalvogs' motion reflects candor, makes good practical sense, and no Defendant opposes it. The motion will therefore be granted.

III

Defendants seek dismissal on a jurisdictional ground, arguing that the *Rooker-Feldman* doctrine bars all the Kvalvogs' claims. "In the two decisions for which the doctrine is named, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Court established the narrow proposition that with the exception of habeas corpus proceedings, the inferior federal courts lack subject-matter jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting review and rejection of those judgments.'" *In re Athens/Alpha Gas Corp.*, 715 F.3d 230, 234 (8th Cir. 2013) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "This conclusion follows from 28 U.S.C. § 1257, which grants to the Supreme Court exclusive jurisdiction over appeals from state-court judgments." *Id.* at 234; *see also Exxon Mobil*, 544 U.S. at 283 ("Federal district courts . . . are empowered to exercise only original, not appellate, jurisdiction."). In *Exxon Mobil*, the Supreme Court noted that inferior federal courts had sometimes applied the *Rooker-Feldman* doctrine too broadly, "overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738," the Full Faith and Credit Act. *Exxon Mobil*, 544 U.S. at 283. To check the lower federal courts' enthusiasm

for the *Rooker-Feldman* doctrine, the Supreme Court made clear that the doctrine applies only to cases filed in federal court by the losing party in state court "complaining of an injury caused by the state-court judgment" that "call[ ] upon the District Court to overturn an injurious state-court judgment." *Id.* at 291–92. Importantly, the Court also explained that § 1257 does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Some cases present straightforward *Rooker-Feldman* questions while others are more difficult. *See Athens/Alpha*, 715 F.3d at 234 (observing that "the scope of the *Rooker-Feldman* doctrine, even as narrowly described in *Exxon Mobil*, is sometimes fuzzy on the margins"); *Dodson v. Univ. of Ark. for Med. Sci.*, 601 F.3d 750, 756 (8th Cir. 2010) (Melloy, J., concurring) ("Indirect appeals from state-court judgments have been more controversial[.]"). Examples are instructive. Consider *Caldwell v. DeWoskin*, 831 F.3d 1005 (8th Cir. 2016). There, the plaintiff, Caldwell, sued his ex-wife (Lavender) and her attorney (DeWoskin) in a federal district court alleging they had violated the automatic stay by continuing to seek enforcement of a judgment of dissolution against Caldwell, including contempt sanctions, in Missouri state court after Caldwell had filed for bankruptcy. *Id.* at 1006–08. The Missouri state court "decided the automatic stay did not

prevent it from holding Caldwell in contempt, and so held." *Id.* at 1007. The Missouri Court of Appeals later reversed the contempt judgment on grounds other than the automatic stay. *Id.* The federal district court entered summary judgment against Caldwell, determining that it lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine, *id.* at 1008, and the Eighth Circuit reversed, *id.* at 1008–09. The Eighth Circuit explained: "Whether the doctrine applies depends on whether a federal plaintiff seeks relief from a state court judgment based on an allegedly erroneous decision by a state court—in which case the doctrine would apply—or seeks relief from the allegedly illegal act or omission of an adverse party." *Id.* at 1008 (citing *Hageman v. Barton*, 817 F.3d 611, 615 (8th Cir. 2016)). Caldwell sought only "compensation for injuries he allege[d] were caused by the actions DeWoskin and Lavender took to enforce the state court's [judgment] after the automatic stay was in place." *Id.* at 1009. The Eighth Circuit concluded that "Caldwell's claims are not barred by *Rooker-Feldman* because they challenge the actions taken by DeWoskin and Lavender 'in seeking and executing the [state contempt orders],' rather than the state court orders themselves." *Id.*; *see also Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016) (recognizing that the *Rooker-Feldman* doctrine "is limited in scope and does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings"); *Robins v. Ritchie*, 631 F.3d 919, 925 (8th Cir. 2011) (recognizing that *Rooker-Feldman* applies "if the federal claims can succeed only to the extent the state court wrongly decided the issues before it").

Informative here, the Seventh Circuit has held in a series of persuasive decisions that "[t]he claim that a defendant in a [federal] civil rights suit 'so far succeeded in

corrupting the state judicial process as to obtain a favorable judgment' is not barred by the *Rooker-Feldman* doctrine." *Loubser v. Thacker*, 440 F.3d 439, 441 (7th Cir. 2006) (quoting *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995)); *see also Newman v. State of Ind.*, 129 F.3d 937, 940–41 (7th Cir. 1997); *Jackson v. Gardner*, 42 F.3d 1391 (7th Cir. 1994) (table); *cf. Dennis v. Sparks*, 449 U.S. 24 (1980). As that court explained in *Nesses*:

> Were [the plaintiff] merely claiming that the decision of the state court was incorrect, even that it denied him some constitutional right, the doctrine would indeed bar his claim. But if he claims, as he does, that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm. Otherwise there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment[.]

68 F.3d at 1005 (internal citations omitted).

In view of these authorities, the *Rooker-Feldman* doctrine does not bar subject-matter jurisdiction over this case. The Kvalvogs do not seek direct review or rejection of the Clay County District Court's orders or judgments or the Minnesota Court of Appeals' decision affirming those orders and judgments in their first lawsuit. They do not request, for example, an injunction directed at a state court—be it the Clay County District Court, the Court of Appeals, or perhaps both—prohibiting enforcement of their orders or a declaration that the state courts' orders are invalid. They seek damages and attorneys' fees and costs from Defendants. *See* Compl. at 63. Awarding the Kvalvogs the

relief they seek would not invite or require rejection of the state courts' judgments.  Holding a Defendant or Defendants liable for unlawful activities perpetrated in connection with a prior judicial proceeding is not the same thing as rejecting a court's judgment in that prior proceeding.  To frame the issue in *Caldwell*'s terms, the Kvalvogs do not "seek[] relief from a state court judgment based on an allegedly erroneous decision by a state court"; rather, they "seek[] relief from the allegedly illegal act[s] or omission[s] of" Defendants that, they say, tainted those proceedings.  *Caldwell*, 831 F.3d at 1008.  That is sufficient for this case to get past *Rooker-Feldman*.

## IV

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## A

Federal jurisdiction is grounded on the Kvalvogs' claims under § 1983 and § 1985, so it makes sense to start (and, as it turns out, end) with these claims.  The Kvalvogs assert

a § 1983 claim against each of Sergeant Eischens, Captain Cheney, and Colonel Langer. The Kvalvogs allege that Sergeant Eischens violated their federal rights to petition for grievances, to procedural and substantive due process, and to equal protection under the First and Fourteenth Amendments, and violated numerous state laws and standards, by creating a false and biased accident reconstruction report and then presenting false testimony at trial.  Compl. ¶¶ 179–206.  The Kvalvogs allege that Captain Cheney and Colonel Langer violated these same federal rights and some of the same laws and rules, Captain Cheney by refusing to assign an officer other than Sergeant Eischens to investigate the accident, *id.* ¶¶ 279–302, and Colonel Langer by failing to "correct" Sergeant Eischens's accident report and failing to address Sergeant Eischens's conflicts of interest, *id.* ¶¶ 303–33.

The Kvalvogs assert a § 1985(2) claim against Park Christian School, Nellermoe, Hannestad, Lee, and Sergeant Eischens, alleging that these Defendants conspired to obstruct justice in the first lawsuit.  *See id.* ¶ 178 (alleging that these Defendants conspired "individually and with others both known and currently unknown to the Plaintiffs to impede, hinder, obstruct, or defeat the due course of justice in the [Clay County District Court]").  The Kvalvogs' allegations in support of this claim are extensive.  *See id.* ¶¶ 178(1)–(28).  But it seems fair to say that these allegations concern the non-disclosure of Sergeant Eischens's relationships with Park Christian, Nellermoe, and Hannestad, flaws in Sergeant Eischens's investigation and report, the alleged evasive and deceptive nature of the individual conspirators' trial testimony, and the spoliation of evidence, all in connection with the first suit.  *Id.*

B

Beginning with collateral estoppel, it is true that the doctrine is an affirmative defense, and affirmative defenses ordinarily do not subject a complaint to dismissal under Rule 12(b)(6). *Roiger v. Veterans Affairs Health Care Sys.*, No. 18-cv-00591 (ECT/TNL), 2019 WL 572655, at *7 (D. Minn. Feb. 12, 2019) (quoting 5B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 1357 (3d ed. & Nov. 2018 Update)). However, collateral estoppel may justify a Rule 12(b)(6) dismissal if the complaint or materials that appropriately may be considered on a Rule 12(b)(6) motion establish the defense beyond dispute. *Id.* Here, Defendants support their collateral estoppel argument with citations to the Complaint and court orders, and there is no question a federal court may consider court orders in adjudicating a Rule 12(b)(6) motion. *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Finstad v. Beresford Bancorporation, Inc.*, 831 F.3d 1009, 1013 (8th Cir. 2016) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). "Under Minnesota law, collateral estoppel is appropriate when the following four elements are met: (1) the issue [is] identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." *Ill. Farmers Ins. Co. v. Reed*, 662 N.W.2d 529, 531–32 (Minn. 2003) (quotation omitted). Regarding

13

the first element, "[t]he issue on which collateral estoppel is to be applied must be the same as that adjudicated in the prior action and it must have been necessary and essential to the resulting judgment in that action." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. Ct. App. 2004) (citing *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982), and *Hauser v. Mealey*, 263 N.W.2d 803, 808 (Minn. 1978)). "The issue must have been distinctly contested and directly determined in the earlier adjudication for collateral estoppel to apply." *Id.* at 837–38. Issue preclusion in Minnesota is not "rigidly applied," rather, "the focus is on whether its application would work an injustice on the party against whom estoppel is urged." *Falgren v. Bd. of Teaching*, 545 N.W.2d 901, 905 (Minn. 1996) (quoting *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613–14 (Minn. 1988)). "The party asserting collateral estoppel has the burden to establish that 'the issue was actually presented and necessarily determined in the earlier action.'" *Mach v. Wells Concrete Prods. Co.*, 866 N.W.2d 921, 927 (Minn. 2015) (quoting *Lange v. City of Byron*, 255 N.W.2d 226, 228 (Minn. 1977)).

Collateral estoppel bars the Kvalvogs' § 1983 claims and, to the extent their foundational allegation overlaps, their § 1985(2) claim. Beginning with the first element, the Kvalvogs' § 1983 claims, and at least to some extent their § 1985(2) claim, are predicated on the allegation that Sergeant Eischens's accident report was the product of bias owing to his relationships with Park Christian School and its leadership and, as a result of this bias, false or incorrect. Compl. ¶¶ 203–06, 288, 295–300, 321, 326, 332 (§ 1983

claims); *id.* ¶¶ 176, 178(1)–(28) (§ 1985(2) claim).[4]   At the Kvalvogs' urging, however, the Clay County District Court and Minnesota Court of Appeals directly and necessarily determined that issue against the Kvalvogs in the first lawsuit.  The Kvalvogs filed a motion in the Clay County District Court seeking relief from the judgment under Minn. R. Civ. P. 60.02 "based on Sgt. Eischens's alleged conflict of interest."  *Kvalvog*, 2021 WL 3027269, at *10.  As the Court of Appeals explained:

> The district court found [the Kvalvogs] characterizations of Sgt. Eischens's investigation inaccurate and that the allegations regarding attempts to sway testimony and statements about PCS's friends in law enforcement were not credible.  Appellants do not meaningfully challenge that finding, other than to assert that the district court was not permitted to undertake a credibility determination.  We disagree.  "Conflicts in the evidence, even though the presentation is upon affidavits, are to be resolved by the [district] court."  *Knapp v. Knapp*, 883 N.W.2d 833, 838 (Minn. App. 2016) (quotation omitted).

*Id.* at *11.  As the Court of Appeals also noted in affirming the District Court's judgment, the need to adjudicate the accuracy of Sergeant Eischens's investigation was prompted by the Kvalvogs' assertion that "personal connections between Sgt. Eischens, Nellermoe, and

---

[4]     Unlike the § 1983 claims, the Complaint leaves room for doubt about whether the § 1985(2) claim may be premised on additional allegations beyond Sergeant Eischens's bias.  Resolving this uncertainty would require considering whether the more than 50 paragraphs alleged specifically in support of the § 1985(2) claim (and perhaps other of the Complaint's paragraphs) plausibly identify other foundational facts.  *See* Compl. ¶¶ 154–178(28).  It is not necessary to go down that road because, as will be discussed in Part IV.C., there is no question that, if collateral estoppel did not preclude some part of the § 1985(2) claim, it fails on the merits.

Hannestad" biased his investigation in Park Christian's favor. *Id.* at \*10.[5]  The Kvalvogs argue that "[t]he issues are not identical because there was no 42 U.S.C. § 1983 claim or a 42 U.S.C. § 1985 claim" in the first lawsuit.  Pls.' Mem. in Opp'n at 11.  This is true, but it is settled that collateral estoppel does not require that causes of action be identical. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979) ("Under the doctrine of collateral estoppel, . . . the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action."); *Price v. Amdal*, 256 N.W.2d 461, 466 (Minn. 1977) ("The doctrine of collateral estoppel may be used as an affirmative defense where the issue presented has already been determined in a previous lawsuit, even though the former suit was based on a totally different cause of action.").

The remaining collateral-estoppel elements also apply.  The Court of Appeals' opinion leaves no doubt that the issue of Sergeant Eischens's bias and resulting falsity of his report was the subject of a final judgment on the merits.  The Kvalvogs were parties to the prior adjudication.  Though the Kvalvogs argue that the post-judgment context in which Sergeant Eischens's conduct was considered in the first suit did not allow them an

---

[5]     It is true, as the Court of Appeals noted, that the Clay County District Court "also found that appellants did not exercise due diligence in uncovering the connections[]" between Sergeant Eischens and Park Christian, but this alternative holding does not mean the District Court's or Court of Appeals' rejection of the Kvalvogs' characterization of Sergeant Eischens's investigation and accident report was not necessary or essential to the judgment. *See Elliot & Callan, Inc. v. Crofton*, No. 07-cv-3391 (PJS/AJB), 2009 WL 3297506, at \*6 (D. Minn. Oct. 13, 2009) (recognizing that "the Minnesota Supreme Court has instructed that when a court explicitly rests its decision on two separate, independent grounds, the parties are collaterally estopped from relitigating *either* of those grounds in subsequent actions").

opportunity to litigate the issue fully and fairly, no authority is cited to support this argument, and the record establishes otherwise. The issue was the subject of extensive briefing by the Kvalvogs before both the District Court and the Court of Appeals, *see* ECF No. 25-1 at 44–84, 152–69, and the Court of Appeals' affirmance of the District Court's determination that the Kvalvogs had the opportunity to "conduct[] extensive discovery" that could have uncovered Sergeant Eischens's connections to Park Christian leadership, *see* 2021 WL 3027269, at *11, confirms the point. The bottom line is that the law does not permit the Kvalvogs to relitigate here the issue of whether Sergeant Eischens's bias and connections to Park Christian School caused him to prepare a false report or give false testimony that, in turn, corrupted the proceedings and outcome of the first lawsuit.

C

If collateral estoppel did not bar the Kvalvogs' § 1983 claims, they would fail for other reasons, including qualified immunity.[6] In determining whether the State Patrol officers who are the subjects of the § 1983 claims have qualified immunity, it is necessary to answer: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). Courts, in their sound discretion, may consider the questions in

---

[6]  To the extent Sergeant Eischens's trial testimony provides a basis for the Kvalvogs' § 1983 claims, Sergeant Eischens is entitled to absolute immunity. *Briscoe v. LaHue*, 460 U.S. 325, 335–36 (1983).

either order, but a § 1983 plaintiff can defeat a claim of qualified immunity only if the answer to both questions is yes. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Kvalvogs identify federal constitutional rights in their Complaint, each assertedly violated during the first lawsuit. They identify their First Amendment right to petition the government for the redress of grievances, *see* Compl. ¶¶ 180, 280, 304, and their Fourteenth Amendment rights to procedural and substantive due process and equal protection, *see id.* ¶¶ 180, 282, 299, 306, 332. There is no dispute that a violation of any of these rights could be a predicate for a § 1983 claim.[7]

The Kvalvogs, however, do not allege facts plausibly showing that Sergeant Eischens, Captain Cheney, or Colonel Langer violated any of these rights. The Kvalvogs' claims under the First Amendment's Petition Clause and Fourteenth Amendment's procedural due process protection seem closely related. "[T]he Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011). To show a deprivation of procedural due process, the Kvalvogs must allege facts plausibly showing (1) that Defendants deprived them of a liberty or property interest protected by the Fourteenth Amendment, and (2) that they were deprived of that interest without procedures that were constitutionally sufficient. *Jenner v. Nikolas*, 828 F.3d 713,

---

[7]     Section 1983 is not a vehicle for the assertion of state-law violations. *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000) ("It is well settled . . . that § 1983 may be an avenue for relief only when a plaintiff asserts that violations of *federal* rights have occurred."). Here, the Kvalvogs rely on state-law or rule violations to support their § 1983 claims. *See, e.g.*, Compl. ¶¶ 183, 184, 193–95, 198, 201, 292–93, 316–19. These allegations do not as a matter of law support the Kvalvogs' § 1983 claims.

716 (8th Cir. 2016) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)).  The Kvalvogs do not allege facts plausibly showing either that they were prevented in any sense from accessing Minnesota's courts or that the state courts' procedures were constitutionally deficient in any respect, and the attention the state courts gave to their claims—a trial before a Clay County jury, an appeal, and consideration by the Minnesota Supreme Court of a petition for discretionary review—would seem to undermine such a claim.  "To state a substantive due process claim against a state official, a plaintiff must demonstrate that a fundamental right was violated and that the official's conduct shocks the conscience." *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020).  "Conscience shocking conduct only includes the most severe violations of individual rights that result from the brutal and inhumane abuse of official power."  *Id.* (quotation omitted).  The Kvalvogs do not allege conscience-shocking conduct or identify any particular aspect of Defendants' conduct to be conscience shocking.  They do not confront this issue in their briefing.  *See, e.g.*, Pls.' Mem. in Opp'n at 12–17.  Finally, though membership in a protected class is an essential element of their § 1983 equal protection and § 1985(2) constitutional conspiracy claims, *Nolan v. Thompson*, 521 F.3d 983, 989 (8th Cir. 2008), the Kvalvogs do not allege facts plausibly showing their membership in a protected class.

*

The Eighth Circuit has regularly observed that, "when a district court has dismissed every federal claim, . . . judicial economy, convenience, fairness, and comity will usually point toward declining to exercise jurisdiction over the remaining state-law claims." *McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020) (internal quotation marks and

citation omitted); *see* 28 U.S.C. § 1367; *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 767 (8th Cir. 2016); *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 726–27 (8th Cir. 2008).  The Kvalvogs' remaining state-law claims lack an independent basis for federal jurisdiction and will therefore be dismissed without prejudice to the Kvalvogs' right to re-file them in state court.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.     Plaintiffs' motion to dismiss Defendants the State of Minnesota and Minnesota State Patrol for lack of jurisdiction and Counts 3, 4, 5, and 6 of the Complaint [ECF No. 70] is **GRANTED**.  Counts 3, 4, 5, and 6 of the Complaint are **DISMISSED WITHOUT PREJUDICE**.

2.     The State Defendants' motion to dismiss [ECF No. 22] is **GRANTED IN PART** and **DENIED IN PART AS MOOT**.

3.     Defendant Tim Kerr's motion to dismiss [ECF No. 38] is **GRANTED**.

4.     Defendants Park Christian School, Christopher Nellermoe, and Kent Hannestad's motion to dismiss [ECF No. 45] is **GRANTED**.

5.     Defendant Josh Lee's motion to dismiss [ECF No. 50] is **GRANTED**.

6.     Counts 1, 2, 9, and 10 of the Complaint are **DISMISSED WITH PREJUDICE**; and

7.      Counts 7 and 8 of the Complaint are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 12, 2022                    s/ Eric C. Tostrud
                                            Eric C. Tostrud
                                            United States District Court